# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Citizens Insurance Company of America<br><br>     Plaintiff,<br><br>v.<br><br>Assessment Systems Corporation, d/b/a Assessment Systems,<br><br>     Defendant. | Case No. 18-CV-01762 (SRN/ECW)<br><br><br>**MEMORANDUM OPINION<br>AND ORDER** |

Jeffrey A. Goldwater and Perry Shorris, Lewis Brisbois Bisgaard & Smith LLP, 50 West Adams Street, Suite 300, Chicago, Illinois, 60661; and Mark A. Smith, Wrobel & Smith, 1599 Selby Avenue, Suite #105, Saint Paul, Minnesota, 55104, for Plaintiff.

Brooke C. Nelson, Jack E. Pierce, and Leah A. Indrelie, Bernick Lifson, P.A., 5500 Wayzata Boulevard, Suite 1200, Minneapolis, Minnesota 55416, for Defendant.

SUSAN RICHARD NELSON, United States District Judge

   Before the Court is Plaintiff Citizens Insurance Company of America's ("Citizens")

Motion for Summary Judgment [Doc. No. 31] seeking a declaratory judgment that it has no

duty to defend or indemnify its insured, Defendant Assessment Systems Corporation

("Assessment Systems"), from a counterclaim asserted against it in a separate lawsuit

between Assessment Systems and a third party, Crane Institute of America Certification, LLC

("Crane").  The Court agrees with Citizens in all relevant respects, and for the reasons

discussed below, it grants its summary judgment motion in full.

## I.    BACKGROUND

### A.    The Parties and Related Entities

Citizens, the plaintiff in this case, is a Michigan corporation with its principal place of business in Massachusetts.  (Compl. [Doc. No. 1] at ¶ 2.)

Assessment Systems, the defendant in this case, is a Minnesota corporation with its principal place of business in Minnesota.  (*Id.* at ¶ 3; Answer [Doc. No. 12] at ¶ 4.) Assessment Systems provides consulting services and testing software to other companies. (*See* Minn. Dist. Ct. Order Granting Assessment Systems' Mot. for Partial Summ. J. [Doc. No. 39-1] at 43; *see also* Minn. Dist. Ct. Joint Statement of the Case [Doc. No. 34-9] at 2.)

Crane, an entity involved in a lawsuit with Assessment Systems but not a party to this case, is a Florida limited liability company engaged in the business of administering certification testing of crane operators, riggers, and signal persons throughout the United States.  (*See* Minn. Dist. Ct. Crane Answer & Countercl. [Doc. No. 1-1] at 4; *see also* Minn. Dist. Ct. Joint Statement of the Case [Doc. No. 34-9] at 3.)

### B.    Citizens' Insurance Policy for Assessment Systems

Citizens issued Businessowners Policy No. OBX A459080-03 (the "Policy") to Assessment Systems for the policy period from October 15, 2017 to October 15, 2018, with a retroactive date of October 15, 2014.  (Policy [Doc. No. 34-3] at 33.)  The Policy is a "claims-made" policy—and contained a prominent warning of that fact, (s*ee id.*)—which required "for coverage to attach, [that] the insurer . . . be given notice of the claim during the policy period," *N.K.K. by Knudson v. St. Paul Fire & Marine Ins. Co.*, 555 N.W.2d 21, 25 (Minn. Ct. App. 1996), *rev. denied* (Minn. Dec. 23, 1996); *see Claims-made Insurance*,

Black's Law Dictionary (11th ed. 2019) ("Insurance that indemnifies against all claims made during a specified period, regardless of when the incidents . . . occurred.").  Included in that Policy was a declaration stating:

**SECTION A – COVERAGE**

**1.  Insuring Agreement**

> **a.**  We will pay those sums "you" become legally obligated to pay as "damages" and "claim expense" because of any "claim" arising out of an "anomaly" in "your product" or "your work" to which this insurance applies.

(Policy [Doc. No. 34-3] at 165.)  The Policy provided for $2,000,000 in coverage, both per claim and in the aggregate.  (*Id.* at 33.)

The Policy's language contained several limits on the applicability of its coverage.  Relevant here, the Policy states:

**1.  Insuring Agreement**
> . . . .
> **b.**  This insurance <u>only applies</u> if:
> > . . . .
> > **(3)**  The "claim" is first made against "you" during the "policy period" or any extended reporting period we provide and the "claim" is reported to us as set forth in **SECTION E – CONDITIONS,** Paragraph **8. Duties In The Event Of "Anomalies", "Claims", or "Suits"**

(*Id.* at 165 (underline emphasis added).)

Paragraph 7[1] of Section E of the portion of the Policy provides, in relevant part:

---

[1]  The cross-reference to paragraph eight of Section E contained within Section A(b)(3) appears to be an error; paragraph *seven* of Section E, not paragraph eight, is the correct cross-reference.  (*See* Policy [Doc. No. 34-3] at 172.)

**SECTION E – CONDITIONS**

. . . .

**7. Duties In The Event Of "Anomalies", "Claims", or "Suits"**

    **a.** If a "claim" is made against "you", "you must see to it that we receive written notice of the "claim" <u>as soon as practicable</u>. To the extent possible, the notice should include:

        **(1)** How, when and where the "anomaly" took place;

        **(2)** The names and addresses of any persons or entities allegedly sustaining injury or "damages", and any witnesses;

        **(3)** The nature and location of any injury or "damages" arising out of the "anomaly".

    **b.** "You" <u>must</u>:

        **(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "claim";

        **(2)** Authorize us to obtain records and other information;

        **(3)** Cooperate with us in the investigation, defense or settlement of the "claim"; and

        **(4)** Assist us, upon our request, in the enforcement of any right against any person or entity which may be liable to "you" because of "damages" to which this insurance may apply.

(*Id.* at 172 (underline emphasis added).)

    **C.    The Underlying Lawsuit**

On January 9, 2015, Crane and Assessment Systems entered into a contract under which Assessment Systems was to provide Crane with software and services related to Crane's certification work for crane operators. (Minn. Dist. Ct. Answer & Countercl. [Doc. 1-1] at 4.) In March of 2016, Assessment Systems delivered an upgraded software system to Crane which, upon launch, allegedly failed to function under the terms of Crane and Assessment Systems' contract. (Minn. Dist. Ct. Joint Statement of the Case [Doc. No. 34-9]

at 3.)  Assessment Systems, for its part, did not consider the terms of its contract with Crane to be breached, and requested payment; Crane refused.  (*Id.* at 2–3.)

In June of 2017, Assessment Systems filed suit against Crane in Hennepin County District Court, claiming breach of contract and seeking approximately $240,000 in damages for non-payment related to the software and services it provided to Crane for testing purposes ("Underlying Lawsuit").[2]  (*See id.* at 2.)  On April 21, 2017, Crane answered and filed a counterclaim against Assessment Systems asserting breach of contract and breach of warranty because Assessment Systems purportedly failed to provide test facilitation software and services as set forth in the companies' contract, and failed to provide services and software free from gross defects (the "Counterclaim").  (Minn. Dist. Ct. Answer & Countercl. [Doc. No. 1-1] at 4–7.)  Crane sought nearly $600,000 in damages stemming from Assessment System's alleged breach of contract and warranty.  (Minn. Dist. Ct. Crane Supp. Crane's Answers to Assessment Systems' First Set of Interrog. [Doc. No. 34-7] at 12–14.)

The initial deadline for discovery in the Underlying Lawsuit was set for December 15, 2017 (*see* Minn. Dist. Ct. Scheduling Order [Doc. No. 34–2] at 2), with a planned dispositive motion cut-off date of March 15, 2018 and trial beginning on July 9, 2018.  (*Id.*)  The discovery deadline was later extended to April 23, 2018; there is no evidence indicating that the deadline was extended beyond that date.  (*See* Answer [Doc. No. 12] at ¶ 4 (admitting to paragraphs 11 and 12 of the Complaint); Compl. [Doc. No. 1] at ¶¶ 11 & 12 (noting that the

---

[2]    The case is captioned *Assessment Systems Corp. v. Crane Inst. of Am. Certification, LLC*, No. 27-CV-17-9264.

discovery deadline in the Underlying Lawsuit was extended to April 23, 2018 and would likely not be extended any further).).

Assessment Systems provided notice to Citizens of Crane's Counterclaim on April 19, 2018—approximately one year after the Counterclaim was filed, and only four days prior to the close of discovery in the Underlying Lawsuit. (*See* Assessment Systems Answers to Citizens First Set of Interrog. [Doc. No. 34-4] at 4; Answer [Doc. No. 12] at ¶ 4; Compl. [Doc. No. 1] at ¶¶ 11 & 12.) Between the date Assessment Systems became aware of the Counterclaim, and the date it notified Citizens of that Counterclaim, Assessment Systems did not obtain any discovery supporting or refuting any of Crane's asserted damages stemming from Crane's Counterclaim, despite acknowledging that it only had until April 23, 2018 to do so. (*See* Riesenberg Dep. [Doc. No. 34-5] at 28:6–25 through 31:1–4 (discussing Assessment Systems' lack of information either substantiating or undermining Crane's damages claims).) In that same period, Assessment Systems did not depose any witnesses, including Crane's expert witness. (*See id.* at 33:12-25 through 34:1–2.) And while the company asserts that it had the ability to take depositions *after* April 23, 2018 (*see* Assessment Systems Answers to Citizens First Set of Interrog. [Doc. No. 34-4] at 5), there are no facts in the record indicating that it acted on that ability.

On May 11, 2018, Citizens appointed counsel to represent Assessment Systems on the Counterclaim in Underlying Lawsuit. (*See* Minn. Dist. Ct. Letter from Citizens to Assessment Systems [Doc. No. 39-1] at 16.) Assessment Systems and Crane filed a Joint Statement of the Case in the Underlying Lawsuit on June 19, 2018, setting forth, among other things, their respective positions and anticipated witness lists. (*See* Minn. Dist. Ct. Joint

Statement of the Case [Doc. No. 34-9].)  On July 20, 2018, with the assistance of Citizens'

appointed counsel, Assessment Systems filed a Motion for Partial Summary Judgment

asserting contractual limitations on Crane's damages stemming from its Counterclaim in the

Underlying Lawsuit.  (*See* Minn. Dist. Ct. Assessment Systems Mot. for Partial Summ. J.

[Doc. No. 39-1] at 19–40.)  On September 19, 2018, the district court granted Assessment

Systems' motion and held that the terms of the contract between Crane and Assessment

Systems precluded Crane from recovering damages for harm to its business reputation, lost

customers, or costs paid to its employees to remedy Assessment Systems' purported

breach.  (*See* Minn. Dist. Ct. Order Granting Assessment Systems Mot. for Partial Summ.

J. [Doc. No. 39-1] at 41, 52–56.)  However, the district court reserved for trial any damages

stemming from amounts Crane paid under the contract.  (*Id.* at 42.)

The Underlying Lawsuit is currently scheduled for trial beginning on September 30,

2019.  (*See* Joint Letter to Magistrate Judge [Doc No. 43] at 1.)

### D.     The Current Declaratory Judgment Action

It is undisputed that Assessment Systems knew about Crane's Counterclaim by April

26, 2017, five days after Crane filed its Answer and Counterclaim in the Underlying Lawsuit.

(*See supra* at 7–8.)  However, Assessment Systems did not provide notice of the Counterclaim

to Citizens until, at the earliest, April 19, 2018—approximately one year after the

Counterclaim was filed, and only four days prior to the close of discovery in the Underlying

Lawsuit.  (*Id.*)  The reason Assessment Systems failed to provide notice to Citizens of the

Counterclaim in the Underlying Lawsuit until April 19, 2018 was because its Director of

Human Resources—the employee responsible for managing insurance coverage issues for

Assessment Systems—was terminated in December 2017, and never informed Assessment Systems of the need to make a claim to Citizens. (Riesenberg Dep. [Doc. No. 34-5] at 9:13–25 through 10:1–21 & 19:2–9; *see also* Citizens Mot. for Summ. J. [Doc. No. 31] at ¶¶ 12–13 (acknowledging Assessment Systems' position regarding its employees' failure to inform the company regarding notice).)

Notably, however, Assessment Systems' Human Resources Director was not terminated until December of 2017—eight months after Crane asserted its Counterclaim in the Underlying Litigation. (Riesenberg Dep. [Doc. No. 34-5] at 10:12–13.) No explanation is offered by Assessment Systems for why notice was not provided to Citizens during those eight months. The company admits that the employee was terminated for poor communication and time management skills, but *not* her ability to obtain and oversee Assessment Systems' insurance policies. (*Id.* at 10:17–25 through 11:1–5.)

Furthermore, despite the employee's termination in December of 2017, Assessment Systems admits that the employee "stayed on to train her replacement" and was "still actively working for [the company] until either late January or early February of 2018." (*Id.* at 10:14–16.) Assessment Systems provides no explanation for why notice was not provided to Citizens in January or February of 2018, while the employee was still working at the company. In fact, Assessment Systems is unaware of any reason, other than the Human Resource Director's termination, that would have prevented it from providing notice to Citizens of the Counterclaim in the Underlying Lawsuit. (*Id.* at 19:10–14.) And Assessment Systems admits that *both* its Director of Human Resources *and* its Vice President of Operations, Erik Riesenberg, were "responsible for monitoring developments in the

Underlying Lawsuit . . . during the pendency of the Underlying Lawsuit." (Assessment Systems Answers to Citizens First Set of Interrog. [Doc. No. 34-4] at 3.)

After Assessment Systems terminated its Human Resources Director, and following the employee's departure sometime in February of 2018, Riesenberg assumed the management of Assessment Systems' insurance matters. (Riesenberg Dep. [Doc. No. 34-5] at 17:2–3.) While reviewing the company's insurance, Riesenberg discovered that the company had a businessowners Policy from Citizens. (*Id.* at 17.) About a week or two later— approximately April 19, 2018—Assessment Systems gave notice to Citizens of the Counterclaim in the Underlying Lawsuit. (*Id.* at 17:17–24, 18:7–17.) Assessment Systems admits that at the time it provided notice to Citizens, it knew that it had been approximately a year since the Counterclaim was filed. (*Id.* at 18:18–21.)

On June 27, 2018, Citizens filed the present complaint seeking a declaratory judgment, under 28 U.S.C. § 2201 (2012) and Rule 57 of the Federal Rules of Civil Procedure, that Citizens has no duty to defend or indemnify Assessment Systems in connection with the Counterclaim in the Underlying Lawsuit due to Assessment Systems' untimely notice to Citizens of the Counterclaim, and the resulting prejudice to Citizens in its ability to investigate and defend the lawsuit. (Compl. [Doc. No. 1] at 5–6.) Following discovery, Citizens moved for summary judgment on June 6, 2019. (Citizens' Mot. for Summ. J. and Statement of Undisputed Facts [Doc. No. 31].) The parties filed briefs in support of and in opposition to the motion, and the Court heard oral argument on July 18, 2019. (*See* Citizens' Mem. In Supp. of Summ. J. [Doc. No. 32] ("Citizens' Mem."); Assessment Systems Mem. in Opp'n to Summ. J. [Doc. No. 38] ("AS Mem."); Citizens' Reply [Doc. No. 40].)

## II.     DISCUSSION

A court may grant a party summary judgment if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). The burden of establishing the nonexistence of any genuine issue of material fact is on the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A party opposing summary judgment " 'must set forth specific facts showing that there is a genuine issue for trial,' and 'must present affirmative evidence in order to defeat a properly supported motion for summary judgment.' " *Ingrassia v. Schafer*, 825 F.3d 891, 896 (8th Cir. 2016) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256–57 (1986)). In considering a summary judgment motion, the Court must "view[] the evidence in the light most favorable to the nonmoving party," *Grinnell Mut. Reinsurance Co. v. Schwieger*, 685 F.3d 697 (8th Cir. 2012), and must not "weigh the evidence and determine the truth of the matter itself," *Nunn v. Noodles & Co.*, 674 F.3d 910, 914 (8th Cir. 2012). "Insurance coverage cases are 'particularly amenable to summary judgment' because 'the interpretation and construction of insurance policies is a matter of law.' " *Chartis Specialty Ins. Co. v. Restoration Contractors, Inc.*, Civil No. 10-1160 ADM/FLN, 2010 WL 3842372, at *3 (D. Minn. Sept. 27, 2010) (quoting *John Deere Ins. Co. v. Shamrock Indus.*, 929 F.2d 413, 417 (8th Cir. 1991)).

### A.     The Applicable Law

"Federal courts sitting in diversity apply state substantive law." *Morgantown Mach. & Hydraulics of Ohio, Inc. v. Am. Piping Products, Inc.*, 887 F.3d 413, 415 (8th Cir. 2018) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)); *see Guardian Fiberglass, Inc. v. Whit Davis Lumber Co.*, 509 F.3d 512, 515 (8th Cir. 2007) ("Federal courts sitting in

diversity, as the district court in this case, must apply the forum state's substantive law, including its conflict of law rules."). Neither party disputes the application of Minnesota law; as a result, the Court will apply Minnesota law to the present motion.

Under Minnesota law, "[i]nsurance coverage issues and the interpretation of insurance contract language are questions of law . . . ." *Jenoff, Inc. v. New Hampshire Ins. Co.*, 558 N.W.2d 260, 262 (Minn. 1997). In interpreting insurance contracts, this Court must "ascertain and give effect to the intentions of the parties as reflected in the terms of the insuring contract." *Id.* (citing *Minnesota Mining & Mfg. Co. v. Travelers Indem. Co.*, 457 N.W.2d 175, 179 (Minn. 1990)). Where the terms of an insurance policy are not specifically defined, they must be "given their plain, ordinary, or popular meaning." *Smith v. St. Paul Fire & Marine Ins. Co.*, 353 N.W.2d 130, 132 (Minn. 1984) (citing *Dairyland Ins. Co. v. Implement Dealers Ins. Co.*, 199 N.W.2d 806, 811 (Minn. 1972)). While ambiguity in an insurance policy is generally resolved against the insurer, *see Jenoff, Inc.*, 558 N.W.2d at 262, "a court has no right to read an ambiguity into the plain language of a policy in order to provide coverage." *Farkas v. Hartford Accident & Indem. Co.*, 173 N.W.2d 21, 24 (Minn. 1969) (citations omitted).

As noted above, the Policy at issue here is a "claims-made" policy, which required "for coverage to attach, [that] the insurer . . . be given notice of the claim during the policy period." *N.K.K. by Knudson*, 555 N.W.2d at 25. A "claims-made" insurance policy differs from an "occurrence" insurance policy; the former requires the insured to give *notice* to the insurer of the claim during the policy period, while the latter requires that "the negligent *act*" giving rise to coverage "occur during the policy period." *Id.* at 25 (emphasis in original).

11

Citizens' motion for summary judgment is based on the notice requirement in the "claims-made" Policy it provided to Assessment Systems. Citizens asserts that (1) timely notice "as soon as practicable" was a condition precedent to the applicability of the Policy it issued to Assessment Systems; (2) no reasonable jury could find that notice was timely in this case; and (3) because notice was not timely, Citizens is excused from indemnifying and defending Assessment Systems from Crane's Counterclaim because Citizens was prejudiced in investigating and defending against the Counterclaim. (Citizens Mem. [Doc. No. 32] at 1.) Assessment Systems, in response, argues that (1) notice was given within the applicable period contained within the Policy; (2) any delay in notice did not prejudice Citizens (and even if it did, prejudice is irrelevant), and; (3) in any event, whether notice was given as soon as practicable is a question of fact which precludes summary judgment. (AS Mem. [Doc. No. 38] at 6–8.)

**B.    Notice Requirement Under the Policy**

The Court must first address whether the Policy's requirement that notice be given "as soon as practicable" is a condition precedent to the applicability of the Policy's insurance coverage. Therefore, the Court must first turn to the language of the Policy to ascertain whether timely notice was required as a condition precedent to insurance coverage before Citizens would be obligated to indemnify or defend Assessment Systems.[3]

---

[3]    The parties do not dispute that Crane's Counterclaim is of the *type*—namely, anomalies or problems with Assessment Systems' work product—normally covered under the Policy issued to Assessment Systems.

The meaning of language in an insurance contract is a question of law. *See Jenoff,*

*Inc.*, 558 N.W.2d at 262. Under Minnesota law, "[a] condition precedent is a contract term

that 'calls for the performance of some act or the happening of some event after the contract

is entered into, and upon the performance or happening of which [the promisor's] obligation

is made to depend.' " *Capistrant v. Lifetouch Nat'l Sch. Studios, Inc.*, 916 N.W.2d 23, 27

(Minn. 2018) (alteration in original) (quoting *Lake Co. v. Molan*, 131 N.W.2d 734, 740 (Minn.

1965)). As a "general rule," conditions precedent "must be literally met or exactly fulfilled,

or no liability can arise on the promise qualified by the condition." *Id.* at 27–28 (citations

omitted) (internal quotation marks omitted). Still, the Minnesota Supreme Court has noted

that " '[t]o the extent that the non-occurrence of a condition would cause disproportionate

forfeiture, a court may excuse the non-occurrence of that condition unless it was a material

part of the agreed exchange.' " *Id.* at 28 (quoting Restatement (Second) of Contracts § 229

(Am. Law. Inst. 1981)). Consequently, the Court must first determine whether the plain

language of the insurance agreement requires, as a condition precedent to insurance coverage,

that notice be given as soon as practicable. If it does, the Court must determine whether the

condition precedent is "material" to the Policy such that it may not be excused due to

disproportionate forfeiture.

### 1. Notice Is A Condition Precedent Under the Policy

When interpreting an insurance contract, "words are to be given their natural and

ordinary meaning and any ambiguity regarding coverage is construed in favor of the insured."

*Am. Fam. Ins. Co. v. Walser*, 628 N.W.2d 605, 609 (Minn. 2001). Two provisions of the

Policy are relevant to this analysis. First, "Section A – COVERAGE" states in relevant part:

13

**1. Insuring Agreement**

. . . .

    **b.** This insurance <u>only applies</u> if:

. . . .

        **(3)** The "claim" is first made against "you" during the "policy period" or any extended reporting period we provide and the "claim" is reported to us as set forth in **SECTION E – CONDITIONS,** Paragraph **8. Duties In The Event Of "Anomalies", "Claims", or "Suits"**

(Policy [Doc. No. 34-3] at 165 (underline emphasis added).) This section unequivocally states that the insurance provided by the Policy "*only applies*" if several conditions—set forth in a list format—are met. (*Id.*) Importantly, under Section A(1)(b)(3), one of those conditions is that the requirements of "Section E – CONDITIONS" are met. (*Id.*)

Paragraph 7 of Section E—labeled "CONDITIONS"—states in relevant part:

**7. Duties In The Event Of "Anomalies", "Claims", or "Suits"**

    **a.** If a "claim" is made against "you", "you must see to it that we receive written notice of the "claim" <u>as soon as practicable</u>. To the extent possible, the notice should include:

        **(1)** How, when and where the "anomaly" took place;
        **(2)** The names and addresses of any persons or entities allegedly sustaining injury or "damages", and any witnesses;
        **(3)** The nature and location of any injury or "damages" arising out of the "anomaly".

(*Id.* at 172 (underline emphasis added).) Consequently, one of the conditions required for attachment of insurance coverage under the Policy is that the insured provide notice to the insurer of any "claim" covered by the agreement "as soon as practicable." (*Id.*) Considered together, then, the plain and natural language used in Section A and Section E of the Policy

dictate that insurance under the Policy "applies only if"—that is, only *when*—Assessment Systems provides notice to Citizens of any "claim" against it "as soon as practicable."

Against this plain language, Assessment Systems argues that because the Policy does not explicitly use the language "condition precedent to coverage," the requirement of notice "as soon as practicable" is not a condition precedent. (AS Mem. [Doc. No. 38] at 6.) For its part, Citizens responds by pointing to Section A's language that states that "[t]his insurance applies <u>only if</u>" several conditions are met, one of which is the notice requirement. (Citizens Reply [Doc. No. 40] at 1 (underline emphasis added).)

The Court holds that Assessment Systems' position is unpersuasive for two reasons. First, it is established Minnesota law that "[a] 'claims-made' policy requires that [an] insurer . . . be given notice of the claim during the policy period" before coverage will attach. *N.K.K. by Knudson*, 555 N.W.2d at 25. Claims-made policies inherently require notice before insurance coverage attaches—indeed, "[b]ecause the reporting requirement helps to define the scope of coverage under a claims-made policy . . . excusing a delay in notice beyond the policy period would *alter a basic term of the insurance contract*." *Esmailzadeh v. Johnson & Speakman*, 869 F.2d 422, 424 (8th Cir. 1989) (emphasis added) (citations omitted). In other words, inherent in a claims-made policy is the fact that "the very description of the risk covered include[s] the requirement that claims be both made and reported within the policy period." *Id.* at 425. "Under [such policies], the [insurance] company clearly disclaims the risk of failure on the part of its insured to give it timely notice." *Id.*

Second, Assessment Systems' assertion that the use of the phrase "condition precedent" is required to create a condition precedent is simply incorrect. Minnesota courts

have held the exact opposite: "No special terms are necessary to create a condition precedent, but there must be some language that indicates the agreement, or its terms, are conditioned upon *some event*." *Lewis v. Borchert*, Nos. A14-0379, A14-0564, 2015 WL 133992, at *9 (Minn. Ct. App. Jan. 12, 2015), *rev. denied* (Minn. Mar. 25, 2015) (emphasis added). Rather, it is the presence of conditional language that "limits or modifies rights or duties" in a contract that determines whether a condition precedent has been created. *Comprehensive Care Corp. v. RehabCare Corp.*, 98 F.3d 1063, 1066 (8th Cir. 1996) (citing *United States v. Gerth*, 991 F.2d 1428, 1434 (8th Cir. 1993)). Phrases such as "provided that," "if," "when," "after," "as soon as," or "subject to" can create conditions precedent. *See id.* (citing *Standefer v. Thompson*, 939 F.2d 161, 164 (4th Cir. 1991)); *see also KCAS, LLC v. Nash-Finch Co.*, No. 8:17CV439, 2019 WL 687885, at *4 (D. Neb. Jan. 9, 2019) (noting that "no magic words are necessary to create a condition" and that conditional phrases will suffice (citation omitted)). Here, although the Policy did not use the "magic words [condition precedent] . . . the Court fails to see a practical difference" between the language used (such as "This insurance applies only if") and what Assessment Systems contends that the Policy should have said, (i.e., "As a condition precedent to coverage, the following must be met."). *Weber v. Travelers Home & Marine Ins. Co.*, 801 F. Supp. 2d 819, 832 (D. Minn. 2011). Therefore, the Court holds that the plain language of the Policy establishes notice "as soon as practicable" as a condition precedent to the Policy's insurance coverage.

### 2. Notice Is A Material Term Of The Policy

The Court also concludes that the notice requirement in the Policy is "material" to the insurance agreement, and therefore cannot be excused. The Eighth Circuit, applying

Minnesota law, has discussed the material nature of notice requirements in a claims-made insurance policy. *See Esmailzadeh*, 869 F.2d at 425. Specifically, the Eighth Circuit has distinguished between "occurrence" insurance policies, where coverage is provided "if the negligent act or omission occurred within the term of the policy," and "claims-made" policies, which provide coverage "if the error or omission *is discovered and brought to the insurer's attention* during the term of the policy." *Id.* at 424 (emphasis added) (citations omitted). Inherent in the nature of a "claims-made" policy is the fact that coverage extends only where notice is provided during the applicable period: "Because the reporting requirement helps to define the scope of coverage under a claims-made policy . . . excusing a delay in notice beyond the policy period would *alter a basic term of the insurance contract*." *Id.* at 424 (8th Cir. 1989) (emphasis added) (citations omitted). In fact, "the very description of the risk covered [in a claims-made policy] include[s] the requirement that claims be both made and reported within the policy period." *Id.* at 425; *see Ritrama, Inc. v. HDI-Gerling Am. Ins. Co.*, 796 F.3d 962, 967 (8th Cir. 2015) (applying Minnesota law and noting that "claims-made insurance polic[ies] cover[] only claims submitted during the policy period" (citation omitted) (internal quotation marks omitted)); *F.D.I.C. v. St. Paul Fire & Marine Ins. Co.*, 993 F.2d 155, 158 (8th Cir. 1993) (noting that " 'claims made' policies place special reliance on notice" such that "the notice provision of a 'claims made' policy is just as important to coverage as the requirement that the claim be asserted during the policy period"). Indeed, "[i]f the insured does not give notice within the contractually required time period, there is simply no coverage under the policy." *F.D.I.C.*, 993 F.2d at 158 (citation omitted). Considering the integral nature of notice to the insurer in claims-made insurance policies, and because the Policy at

issue here is a claims-made policy, the Court holds as a matter of law that the notice requirement in the Policy is a "material"—indeed a "basic" or foundational—term of the insurance agreement.

For all these reasons, the Court holds that the Policy's requirement that notice be given to Citizens "as soon as practicable" constitutes a material condition precedent that "must be literally met or exactly fulfilled, or no liability can arise on the promise qualified by the condition." *Capistrant*, 916 N.W.2d at 27–28 (citations omitted) (internal quotation marks omitted).

### C.    Notice Was Not Given As Soon As Practicable

Having determined that notice "as soon as practicable" is a material condition precedent to the applicability of insurance coverage under the Policy, the Court now considers whether there is a genuine dispute of material fact with respect to whether notice was provided "as soon as practicable."

Generally, the question of whether notice was given as soon as practicable under a claims-made insurance policy is for the jury to determine. *Cargill, Inc. v. Evanston Ins. Co.*, 642 N.W.2d 80, 86 (Minn. Ct. App. 2002) (citation omitted). Indeed, fact issues may be present where, for example, the insured offers a plausible reason for delay. *Id.* at 87 (noting that a factfinder could find that Cargill's delay in providing notice was practicable because of a $1 million deductible on its insurance policy). However, the Court may grant summary judgment "when there is no genuine issue of material fact" which occurs when "the nonmoving party presents evidence creating only a metaphysical doubt as to a factual issue or the evidence is not sufficiently probative to permit reasonable persons to draw different

18

conclusions." *Id.* (citation omitted). What constitutes notice as soon as practicable is a determination made based on all the facts and circumstances of the case. *See St. Paul Fire & Marine Ins. Co. v. Wabash Fire & Cas. Ins. Co.*, 264 F. Supp. 637, 642 (D. Minn. 1967); *see also Cargill, Inc.*, 642 N.W.2d at 86–87 (citing *St. Paul Fire & Marine Ins. Co.*, 264 F. Supp. at 642).

Citizens argues that Assessment Systems failed to provide notice "as soon as practicable" because its sole reason for delaying notice by approximately one year—the neglect of its Human Resources Director—is not a valid reason to delay notice. (Citizens Mem. [Doc. No. 32] at 3.) It notes that Assessment Systems has admitted that there were no other circumstances preventing it from providing notice to Citizens at an earlier date. (Citizens Reply [Doc. No. 40] at 3.). Such a delay, Citizens claims, is "untimely as a matter of law." (Citizens Mem. [Doc. No. 32] at 3.)

Assessment Systems argues that it provided notice within the applicable policy period, and that at the very least, there is a question of fact as to whether it provided notice as soon as practicable under the circumstances. (AS Mem. [Doc No. 38] at 9.) Specifically, the company argues that the employee responsible for advising Assessment Systems of its insurance responsibilities was terminated due to performance issues, and that in the aftermath of that termination, Assessment Systems provided notice as soon as practicable when it became aware of the need to do so. (*Id.*)

The Court finds that summary judgment is warranted here; the undisputed facts demonstrate that notice was *not* given as soon as practicable. Two reasons support this conclusion. First, Assessment Systems failed to provide *any* evidence explaining the eight-

month delay between the date Crane filed its Counterclaim in the Underlying Lawsuit, and the date that Assessment Systems terminated its Human Resources Director. It is undisputed that Assessment Systems knew about Crane's Counterclaim by April 26, 2017, five days after Crane filed its Answer and Counterclaim in the Underlying Lawsuit. (*See* Assessment Systems Answers to Citizens First Set of Interrog. [Doc. No. 34-4] at 4; Minn. Dist. Ct. Answer & Countercl. [Doc. No. 1-1] at 8; *see also* Riesenberg Dep. [Doc. No. 34-5] at 12:12–25.) It is equally undisputed that Assessment Systems did not provide notice of the Counterclaim to Citizens until approximately one year later, on April 19, 2018. (*See* Assessment Systems Answers to Citizens First Set of Interrog. [Doc. No. 34-4] at 4.)

Assessment Systems' only explanation for this year-long gap is that its Director of Human Resources—the employee responsible for managing insurance coverage issues for Assessment Systems—never informed it of the need to make a claim, and that the employee was terminated in December 2017. (Riesenberg Dep. [Doc. No. 34-5] at 9:13–25 through 10:1–21 & 19:2–9; *see also* Citizens Mot. for Summ. J. [Doc. No. 31] at ¶¶ 12–13 (acknowledging Assessment Systems' position regarding its employees' failure to inform the company regarding notice).) But even construing that fact in a light most favorable to Assessment Systems—as the Court must, *see Bradford v. Palmer*, 855 F.3d 890, 892 (8th Cir. 2017) (requiring the court to construe the facts "in the light most favorable" to the nonmoving party)—it still does not explain the eight-month gap between the initial date that Assessment Systems became aware of Crane's Counterclaim and the Director's termination. Assessment Systems offers no evidence or explanation for why notice was not provided to Citizens during that eight-month time period *before* the Director's termination. Presumably, the company

relies on the fact that its Human Resources Director failed, during those eight months, to notify it of the need to file a claim. However, Assessment Systems admits that its Human Resources Director was fired for poor communication and time management skills, *not* her ability to obtain and oversee Assessment Systems' insurance policies. (Riesenberg Dep. [Doc. No. 34-5] at 10:17–25 through 11:1–5.) And the company admits that it knows of no other reason that would have prevented it from providing notice to Citizens of the Counterclaim in the Underlying Lawsuit. (*Id.* at 19:10–14.)

Put succinctly, Assessment Systems has offered no explanation or evidence, and consequently no genuine dispute of material fact, as to why notice was not forthcoming in the first eight months following Crane's Counterclaim. *See Food Mkt. Merch., Inc. v. Scottsdale Indem. Co.*, 857 F.3d 783, 786–87 (8th Cir. 2017) (affirming summary judgment where notice under a claims-made policy was not provided for over seven months and no plausible reason for the delay was offered).

Second, Assessment Systems' reliance on the purported negligence of its Human Resources Director does not create a genuine dispute of material fact as to whether notice was given "as soon as practicable." As an initial matter, the negligence of an employee does not excuse a company's failure to comply with a contract. *See Edgewater Motels, Inc. v. Gatzke*, 277 N.W.2d 11, 15 (Minn. 1979) (noting the "well settled" principle that employers are vicariously liable for their employee's negligent conduct so long as the wrongful act is committed within the scope of employment); *see also Laurie v. Mueller*, 78 N.W.2d 434, 437 (Minn. 1956) (noting that "if an employer expects to derive certain advantages from the acts

performed by others for him, he . . . should bear the financial responsibility for injuries occurring to innocent third persons as a result of the negligent performance of such acts").

Even assuming the Director's purported negligence is a legally sufficient reason for delay in providing notice, the company admits that the Director "stayed on to train her replacement" and was "still actively working for [the company] until either late January or early February of 2018." (Riesenberg Dep. [Doc. No. 34-5] at 10:14–16.) Consequently, even after identifying problems with the Director's work product, Assessment Systems continued to rely upon that same problematic employee to train the next person who would be responsible for managing the company's insurance matters. The Court will not ascribe plausibility to Assessment Systems' "negligent employee defense" when the company itself retained the purportedly negligent employee for training purposes *after* determining that the employee had performance issues *and* deciding to terminate the employee.

Moreover, the most "plausible" reason for delay offered by Assessment Systems comes too late in the case's timeline to raise a genuine dispute of material fact. After the Human Resources Director left the company sometime in February of 2018, Assessment Systems' Vice President of Operations, Riesenberg, took approximately two months to provide notice to Citizens of the Counterclaim. (*Id.* at 17:12–24, 18:7–17.) Riesenberg's explanation for that delay was that he needed to "familiarize [himself] with all of [Assessment Systems] various policies and coverages." (*Id.* at 17:9–11.) On its own, such an explanation is not wholly unreasonable or implausible, especially if Assessment Systems has numerous insurance policies. A reasonable factfinder could perhaps find such an explanation to be plausible. However, the Court finds that Riesenberg's need to familiarize himself with

Assessment Systems' various policies does nothing to explain or alleviate the entirely unexplained—and as noted above, unjustified—eight to ten-month delay *before* Riesenberg even became involved with evaluating the Policy at issue.

For all these reasons, the Court finds that there is no genuine dispute of material fact over whether notice was provided to Citizens "as soon as practicable." Assessment Systems' explanation for why notice was not provided until almost a year after the Counterclaim was filed is not legally sufficient nor sufficiently probative to allow a reasonable factfinder to find in its favor. Indeed, holding otherwise would permit employers to dodge insurance contract requirements where their employees are less than vigilant on insurance matters, which in turn "may prejudice the insurer because the lapse of time can deprive the insurer of the opportunity for prompt investigation and impede defense against fraudulent claims." *Noon Realty, Inc. v. Aetna Ins. Co.*, 387 N.W.2d 465, 467 (Minn. Ct. App. 1986) (citation omitted).

An "insurance company must keep the promise" it makes to its insured, "[b]ut it [is] not paid to keep, nor should it be held to, a promise plainly not within the unambiguous language of the policy." *Esmailzadeh*, 869 F.2d at 425. Here, the Policy required notice as soon as practicable. Assessment Systems has failed to "set forth specific facts showing that there is a genuine issue for trial" respecting notice, *see Ingrassia*, 825 F.3d at 896 (citation omitted) (internal quotation marks omitted), and summary judgment is therefore warranted.

### D. A Showing of Prejudice Is Not Required. Even If It Were, Citizens Suffered Actual Prejudice From Assessment Systems' Untimely Notice

Having concluded that there is no genuine dispute of material fact with respect to the untimely notice provided by Assessment Systems, the Court must address one final point. In

its initial brief to the Court, Citizens asserted that an insured's failure to provide notice of a claim or lawsuit "as soon as practicable" relieves the insurer of its duty to defend or indemnify "if the failure to give notice results in prejudice to the insurer." (Citizens Mem. [Doc. No. 32] at 3.) Assessment Systems asserts, and Citizens concedes in its reply memorandum, that the presence or absence of prejudice is irrelevant to the determination of coverage under a claims-made policy. (AS Mem. [Doc. No. 38] at 5; Citizens Reply [Doc. No. 40] at 3–4.)

The Court agrees that a showing of prejudice to Citizens as a result of Assessment Systems' untimely notice is not required. "Minnesota law is clear that a showing of actual prejudice is *not required* when notice is a condition precedent to coverage under an insurance policy." *Michaels v. First USA Title, LLC*, No. A14-0931, 2015 WL 1514018, at *5 (Minn. Ct. App. Apr. 6, 2015) (emphasis added) (citing *Sterling State Bank v. Virginia Sur. Co.*, 173 N.W.2d 342, 344 (Minn. 1969); *Cargill, Inc.*, 642 N.W.2d at 87), *rev. denied* (Minn. June 16, 2015). Importantly, this principle applies to claims-made policies like the Policy at issue here. *See Winthrop & Weinstine v. Travelers Cas. & Sur. Co.*, 993 F. Supp. 1248, 1255 (D. Minn. 1998) ("The issue of prejudice or absence of prejudice to the insurer is not relevant to the determination of coverage under a claims-made policy."), *affirmed sub. nom.*, *Winthrop & Weinstine, P.A. v. Travelers Cas. & Sur. Co.*,187 F.3d 871 (8th Cir. 1999).

But even if a showing of actual prejudice were required, there is no genuine dispute of material fact that Citizens suffered actual prejudice as a result of Assessment Systems' untimely notice. To evaluate whether an insurer is prejudiced as a result of an insured's delay in giving notice, "the dispositive factor is not how much time elapses prior to the tender of defense; it is what happens during that time." *Hooper v. Zurich Am. Ins. Co.*, 552 N.W.2d

31, 36 (Minn. Ct. App. 1996), *rev. denied* (Minn. Sept. 20, 1996). Where an insurer loses the opportunity to investigate and participate in defense of a claim, *see Michaels*, 2015 WL 1514018, at *5; *Hooper*, 552 N.W.2d at 36, or the opportunity to protect its rights of subrogation and other interests, *Winthrop & Weinstine*, 993 F. Supp. at 1256, it suffers actual prejudice as a result of untimely notice.

Assessment Systems argues that it has been represented throughout the Underlying Lawsuit and has been "actively investigating and defending against the Counterclaim." (AS Mem. [Doc. No. 38] at 7.) It offers no evidence, however, from which a reasonable factfinder could find support for its assertion. In fact, to the contrary, during the one-year period between when Crane filed its Counterclaim and when Citizens received notice of the Counterclaim, Assessment Systems admits that it did not obtain any discovery supporting or refuting any of Crane's asserted damages. (*See* Riesenberg Dep. [Doc. No. 34-5] at 28:6–25 through 31:1–4 (discussing Assessment Systems' lack of information either substantiating or undermining Crane's damages claims).) It also admits that it failed to depose any witnesses, including Crane's expert witness. (*See id.* at 33:12-25 through 34:1–2.) And while the company asserts that it had the ability to take depositions *after* April 23, 2018 (*see* Assessment Systems Answers to Citizens First Set of Interrog. [Doc. No. 34-4] at 5), there are no facts in the record indicating that it acted on that ability.

Citizens was notified of the Counterclaim just four days prior to the close of discovery in the Underlying Lawsuit, giving it essentially no time to remedy any failure by Assessment Systems to conduct meaningful discovery. (*See* Assessment Systems Answers to Citizens First Set of Interrog. [Doc. No. 34-4] at 4; Answer [Doc. No. 12] at ¶ 4; Compl. [Doc. No. 1]

at ¶¶ 11 & 12.)  As a result, Citizens is effectively flying blind with respect to the factual underpinnings of Crane's damages stemming from its Counterclaim, a condition it cannot remedy in advance of the September 30 trial date for the Underlying Lawsuit. (*See* Joint Letter to Magistrate Judge [Doc No. 43] at 1.)  Knowing next to nothing about what an opposing party's witnesses will say certainly prejudices Citizens' right—and indeed, its duty—to defend Assessment Systems from Crane's Counterclaim.  (*See* Policy [Doc. No. 34-3] at 166 (noting Citizens' right and duty to defend its insured against a claim).)

Despite its admissions, Assessment Systems argues that because Citizens' appointed counsel successfully achieved partial summary judgment with respect to several categories of damages on Assessment Systems' behalf, Citizens has not been prejudiced by the one-year delay.  (AS Mem. [Doc. No. 38] at 7–8.; Minn. Dist. Ct. Order Granting Assessment Systems Mot. for Partial Summ. J. [Doc. No. 39-1] at 41, 52–56.)  The Court disagrees. As an initial matter, a successful partial summary judgment motion does not resolve the Underlying Lawsuit in a manner that eliminates all prejudice to Citizens.  More importantly, however, the nature of the successful partial summary judgment motion brought by Citizens' appointed counsel does nothing to remedy the failure by Assessment Systems to conduct meaningful discovery about Crane's damages' claims.

Citizens' appointed counsel expressly noted in its motion for partial summary judgment that "[f]or the purposes of this motion, the specific facts concerning each parties' alleged breach *are immaterial* to the Court's decision regarding the Contract" because the summary judgment motion was based entirely on "the limitation of damage provisions *contained within the Contract*" itself.  (Minn. Dist. Ct. Assessment Systems' Mot. for

Partial Summ. J. [Doc. No. 39-1] at 22 (emphasis added).)  Put another way, the summary judgment motion filed by Citizens' counsel relied exclusively on the language of the underlying contract.  (*Id.*)  Its success was not related to the inability of Citizens' to investigate, and participate in the defense against, the Counterclaim.  Moreover, the district court still permitted Crane's counterclaim for damages arising from amounts paid to Assessment Systems under the contract to survive to trial.  (*See* Minn. Dist. Ct. Order Granting Assessment Systems Mot. for Partial Summ. J. [Doc. No. 39-1] at 42.)  For the reasons noted above, Citizens could not—and indeed, now cannot—investigate those surviving damages claims due to Assessment Systems' inadequate discovery.  Therefore, the prior success of Citizens' appointed counsel on partial summary judgment is "not sufficiently probative to permit reasonable persons to draw different conclusions" with respect to prejudice, *Cargill, Inc.*, 642 N.W.2d at 87, and summary judgment is warranted.

## III.    CONCLUSION

Ultimately, the Court holds that (1) as a matter of law, the Policy issued by Citizens required, as a material condition precedent to coverage, that Assessment Systems provide notice of Crane's Counterclaim "as soon as practicable," and (2) there is no genuine dispute of material fact that Assessment Systems failed to provide notice of the Counterclaim "as soon as practicable."  Moreover, the Court also holds that while a showing of actual prejudice to Citizens is not required, there is no genuine dispute of material fact that Citizens was prejudiced by Assessment Systems' delayed notice.  Therefore, Citizens is entitled to summary judgment, and the Court grants its motion.

Based on the submissions and the entire file and proceedings herein, **IT IS HEREBY ORDERED** that Plaintiff Citizens' Motion for Summary Judgment [Doc. No. 31] is **GRANTED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**


Dated: August 26, 2019                              s/ Susan Richard Nelson
                                                    SUSAN RICHARD NELSON
                                                    United States District Judge